# EXHIBIT A

1
2
3
4
5
6
7
8
9

COPY
ORIGINAL FILED

SEP 0 2 2015

SPOKANE COUNTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF SPOKANE**

10  | SM HILL FAMILY, LLC, a Washington limited
11  | liability company, and HILL AEROSYSTEMS,
    | INC., a Washington corporation,
12  |
13  |                          Plaintiffs,
14  | vs.
15  | UNITECH HOLDINGS, INC., an Oklahoma
    | corporation; ACORN GROWTH COMPANIES,
16  | LC, an Oklahoma corporation; EDGEWATER
17  | SERVICES, LLC d/b/a THE EDGEWATER
    | FUNDS, a Delaware limited liability; and JOHN
18  | DOE COMPANIES 1-99, the corporate affiliates
19  | of ACORN GROWTH COMPANIES, LC and
    | EDGEWATER SERVICES, LLC d/b/a THE
20  | EDGEWATER FUNDS,
21  |                          Defendants.
22

No. **15203617-8**

COMPLAINT FOR DAMAGES

23    The Plaintiffs by and through their undersigned counsel and for cause of action against

24  the Defendants, allege, aver and state:

25              **I. THE PARTIES & THEIR RELATIONSHIPS TO ONE ANOTHER**

26      1.1    SM Hill Family, LLC (hereinafter "SM Hill") is a limited liability company

27  organized under the laws of the State of Washington and doing business in the State of
28

COMPLAINT FOR DAMAGES: 1

*9*

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

Washington.

1.2    Hill Aerosystems, Inc. (hereinafter "Hill Aerosystems") is a corporation organized under the laws of the State of Washington and doing business in the State of Washington.

1.3    Unitech Holdings, Inc. (hereinafter "Unitech"), upon information and belief, is a corporation organized under the laws of the State of Oklahoma.

1.4    Acorn Growth Companies, LC (hereinafter "Acorn"), upon information and belief, is a corporation organized under the laws of the State of Oklahoma.

1.5    Edgewater Services, LLC d/b/a The Edgewater Funds (hereinafter "Edgewater"), upon information and belief, is a corporation organized under the laws of the State of Delaware.

1.6    John Doe Companies 1-99, upon information and belief, are affiliate and associate companies of Acorn and Edgewater (John Doe Companies 1-99, Acorn, and Edgewater are hereinafter collectively referred to as "the AGC Companies").

1.7    In December 2012, Unitech purchased 95% of Hill Aerosystems' stock; Stephen M. Hill and Lorimay Hill continued to own 5% of Hill Aerosystems' stock.

1.8    At all times relevant hereto Unitech was controlled by the AGC Companies.

1.9    On November 21, 2012, Stephen M. Hill and Lorimay Hill transferred ownership of the 5% interest in Hill Aerosystems into SM Hill as a capital contribution.

1.10    In September 2014, SM Hill purchased Unitech's 95% interest in Hill Aerosystems. That purchase was accomplished via a written Stock Purchase Agreement (hereinafter, the "Stock Purchase Agreement"), dated September 4, 2014.

1.11    As a result, Unitech/the AGC Companies controlled Hill Aerosystems from December 2012 to September 2014, and SM Hill controlled Hill Aerosystems from September

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

2014 forward.

## II.  JURISDICTION & VENUE

2.1     As provided in the Stock Purchase Agreement, the Spokane County Superior Court enjoys subject matter jurisdiction over this controversy.

2.2     As provided in the Stock Purchase Agreement, the Spokane County Superior Court enjoys personal jurisdiction over the Defendants

2.3     As provided in the Stock Purchase Agreement, venue properly lies within the Spokane County Superior Court.

## III.  FACTS

3.1     The Plaintiffs reassert and reallege each and every allegation and averment made above as though fully set forth herein.

**A.    SM HILL AND UNITECH ENTERED INTO THE STOCK PURCHASE AGREEMENT AND A RELATED LETTER AGREEMENT**

3.2     On or about September 4, 2014, Unitech and SM Hill executed the Stock Purchase Agreement, whereby SM Hill became the sole owner of Hill Aerosystems.

3.3     Prior to September 4, 2014, Unitech and SM Hill participated in a due diligence process, whereby Unitech and the AGC Companies were obligated to disclose all material aspects of the business and all material issues related to the business.

3.4     In the Stock Purchase Agreement, Unitech covenanted that the financial statements were "accurate and presented fairly in all material respects the financial condition and results of operations and cash flows" of Hill Aerosystems.

3.5     The Stock Purchase Agreement also contained a warranty, by Unitech, that there were no undisclosed liabilities – with certain qualifications.

**B.    UNITECH BREACHED ITS OBLIGATIONS UNDER THE LETTER AGREEMENT.**

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

3.6    At the same time as the Stock Purchase Agreement, Unitech and SM Hill executed a "Letter Agreement" that served as an amendment to the Stock Purchase Agreement.

3.7    Prior to the Letter Agreement's entry, Hurricane Electronics of Florida (hereinafter "Hurricane") asserted a claim against Hill Aerosystems for $40,339.98 (hereinafter, the "Hurricane Claim").

3.8    The Letter Agreement addressed both how the Hurricane Claim would be resolved and how the costs of resolving said claim would be paid.

3.9    Specifically, the Letter Agreement placed responsibility for negotiating a resolution of the Hurricane Claim with SM Hill, and the Letter Agreement provided that Unitech would pay any costs associated with resolving the Hurricane Claim – up to a maximum of $40,000.

3.10    However, the Letter Agreement required SM Hill to obtain Unitech's consent prior to settling or compromising the Hurricane Claim, and the Letter Agreement obliged Unitech to act reasonably in providing consent.

3.11    Pursuant to the Letter Agreement, SM Hill investigated the Hurricane Claim and determined that, while there were potential defenses to the Hurricane Claim, disputing or litigating the issues would consume greater resources than simply paying the Hurricane Claim.

3.12    In accord with the Letter Agreement, SM Hill notified Unitech of its intent to pay the full amount of the Hurricane Claim.  Unitech, however, has refused to consent to the resolution of the Hurricane Claim.

3.13    On or about October 20, 2014, in accord with the Stock Purchase Agreement's notice provisions, SM Hill gave Unitech notice that a claim was being asserted for Unitech's refusal to consent to the reasonable resolution of the Hurricane Claim.

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

3.14    The same notice provisions (from the Stock Purchase Agreement) provided that Unitech's failure to respond to a claim within 30 days would result in the claim being acknowledged and irrevocably deemed valid.

3.15    Unitech never responded to SM Hill's notice of claim with respect to the Hurricane Claim.

C.    AFTER THE STOCK PURCHASE TRANSACTION CLOSED, CERTAIN ACCOUNTS PAYABLE CAME TO LIGHT.

3.16    Under the Stock Purchase Agreement, Unitech warranted to SM Hill that Hill Aerosystems had no existing liabilities, other than those that were identified in the Stock Purchase Agreement itself or in the company's financial records.

3.17    The Stock Purchase Agreement also contained a mechanism whereby SM Hill could assert a claim for Unitech to indemnify against any such undisclosed liabilities.  That mechanism required SM Hill to raise the issue via a written notice of claim.  Thereafter, Unitech had 30 days to either acknowledge or deny the claim.  In the event that Unitech failed to respond to a notice of claim within the 30 day period, the claim was conclusively deemed valid and accepted.

3.18    After the Stock Purchase Agreement closed, SM Hill identified approximately $102,000 in undisclosed accounts payable by Hill Aerosystems to various third parties (hereinafter, the "Undisclosed Accounts Payable").  The Undisclosed Accounts Payable included:

3.19.1    $983.19 to Wesco Aircraft by invoice numbers 7597593, 7639705, 7648952, 7686837, 7691855, and 7753668;

3.19.2    $1,039.64 to Avio-Diepen by invoice number 544897;

3.19.3    $175.00 to MAPSCO by invoice number 554916;

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

3.19.4    $1,830.63 to Omax by invoice number 183629;

3.19.5    $208.20 to Fastenal by invoice numbers WAENU38363 and WAENU38347;

3.19.6    $1,170.48 to National Precision by invoice number;

3.19.7    $19,452.21 to National Precision by invoice numbers 549850-03 and 549850-04;

3.19.8    $1,528.96 to Arrow Lumber by invoice number 181312;

3.19.9    $2,603.36 to Sedgwick Claims Management Services by invoice number 23194; and

3.19.10    $74,000 to Hurricane by Purchase Order number 0407101.

3.19    The Undisclosed Accounts Payable were obligations of Hill Aerosystems, and they had to be paid. Hill Aerosystems and SM Hill paid the Undisclosed Accounts Payable.

3.20    Pursuant to the Stock Purchase Agreement, on or about June 23, 2015, SM Hill gave Unitech written notice of a claim for indemnification with respect to the Undisclosed Accounts Payable.

**D.    AFTER THE STOCK PURCHASE TRANSACTION CLOSED, THE BOEING COMPANY RETURNED PRODUCTS FOR REWORK.**

3.21    Following the stock purchase transaction's closing, The Boeing Company (hereinafter "Boeing") returned certain products to Hill Aerosystems for rework, due to manufacturing defects (the "Boeing Rework").

3.22    Those products were shipped to Boeing by Hill Aerosystems prior to the stock purchase transaction's closing date.

3.23    Hill Aerosystems corrected the manufacturing defects and as a result, incurred damages in the approximate amount of $6,500 relating to the Boeing Rework.

COMPLAINT FOR DAMAGES: 6

*14*

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

3.24     Pursuant to the Stock Purchase Agreement, on or about June 23, 2015, SM Hill gave Unitech written notice of a claim for indemnification with respect to the Boeing Rework.

**E.     AFTER THE STOCK PURCHASE TRANSACTION CLOSED, UNPAID EMPLOYEE COSTS CAME TO LIGHT.**

3.25     As part of the stock purchase transaction, certain employees of Hill Aerosystems were to be terminated prior to or at closing and Unitech was to pay all costs and expenses associated with those terminations, including all wages, accrued vacation, and severance expenses (hereinafter "Employee Termination Costs").

3.26     At closing, Unitech refused to pay approximately $73,000 in Employee Termination Costs.

3.27     The Employee Termination Costs were obligations of Hill Aerosystems, and they had to be paid.  Hill Aerosystems and SM Hill paid the Employee Termination Costs.

3.28     Pursuant to the Stock Purchase Agreement, on or about February 27, 2015, SM Hill gave Unitech notice of a claim for indemnification with respect to the Employee Termination Costs.  Unitech never responded to the notice of claim relating to the Employee Termination Costs.

**F.     AFTER THE STOCK PURCHASE TRANSACTION CLOSED A CLAIM OF SETOFF BY THE BOEING COMPANY CAME TO LIGHT.**

3.29     On or about June 10, 2014 (at which time Unitech/the AGC Companies controlled Hill Aerosystems), Boeing sent Hill Aerosystems a letter noting certain deficiencies with respect to in Hill Aerosystem's performance of contractual obligations to Boeing (hereinafter, the "June 2014 Notice").

3.30     Unitech did not disclose the June 2014 Notice to SM Hill during the stock purchase transaction or during the prior due diligence process.

COMPLAINT FOR DAMAGES: 7



3.31    On or about December 30, 2014 (after the Stock Purchase Transaction closed) Boeing sent Hill Aerosystems a letter indicating that Boeing was setting off future payments to Hill Aerosystems, due to the deficiencies identified in the June 2014 Notice. Boeing asserted a setoff right in the amount of approximately $46,000 (hereinafter, the "Boeing Setoff Claim").

3.32    Pursuant to the Stock Purchase Agreement, on or about January 16, 2015, SM Hill gave Unitech notice of a claim for indemnification with respect to the Boeing Setoff Claim. Unitech did not respond to the notice of claim within the required 30-day period.

3.33    Having received no response from Unitech, SM Hill endeavored to negotiate a resolution with Boeing. SM Hill was successful in resolving Boeing's claim. Specifically, Boeing reduced its setoff claim to $22,800.30.

3.34    On or about June 23, 2015, SM Hill informed Unitech that the Boeing Setoff Claim was reduced to $22,800.30 and demanded payment. To date, Unitech has not satisfied the Boeing Setoff Claim.

**G.    AFTER THE STOCK PURCHASE TRANSACTION CLOSED A MAJOR DEFICIENCY IN UNITECH'S FINANCIAL DISCLOSURES CAME TO LIGHT.**

3.35    Boeing placed an order for certain aerospace parts (known as trunnions) in May 2012 (at which time Unitech/the AGC Companies controlled Hill Aerosystems). The order was very significant. The contract price was approximately $2 million. Direct manufacturing expenses were estimated at approximately $1.35 million, leaving a projected gross profit of nearly $600,000.

3.36    The Boeing contract specifications were exacting because many lives depend upon the quality and exactness of aerospace parts.

3.37    Manufacture of the trunnions began under Unitech/the AGC Companies' ownership and control of Hill Aerosystems.

COMPLAINT FOR DAMAGES: 8

*16*

3.38     Tim Drake was hired, as a Hill Aerosystems employee and was tasked with being the quality manager for the Boeing trunnion project, which included conducting an analysis of the trunnions and the manufacturing specifications. In that process, he determined that the parts (as manufactured) did not conform to the Boeing contract specifications.

3.39     Mr. Drake reported the nonconformity to Ron Beigh, the general manager for Hill Aerosystems. Mr. Drake stressed the need to use certain computerized measuring devices to ensure conformity to the contract. Unitech/the AGC Companies, however, refused to allocate the monies necessary to use that measuring equipment. Mr. Drake also stressed the near inevitability of Boeing rejecting the nonconforming parts.

3.40     Mr. Beigh and another manager for the AGC Companies, named Rick Armstrong, instructed Mr. Drake to continue manufacturing the parts despite the nonconformity to the Boeing contract and despite the potential for rejection by Boeing.

3.41     Mr. Drake was also instructed by Unitech/the AGC Companies not to discuss this nonconformity via email; as a result, it was not discoverable during SM Hill's diligence process.

3.42     Despite Unitech and the AGC Companies being aware that the parts did not conform to the contract, Hill Aerosystems's financial records recorded the entire Boeing trunnion order as a work in progress asset. There was no reduction in value to reflect the potential for rejection by Boeing. There was no notation of the non-conformity.

3.43     During the due diligence process, no representative of Unitech or the AGC Companies disclosed the nonconformity issue to SM Hill. No notation was made in any due diligence document to reflect the nonconformity or the potential for rejection by Boeing.

3.44     After the stock purchase transaction closed, SM Hill became aware of the

COMPLAINT FOR DAMAGES: 9     *17*

nonconformity, and SM Hill became aware that Mr. Drake had brought the nonconformity to the attention of Unitech and the AGC Companies management, at a point in time when reasonable mitigation was possible.

3.45    After the stock purchase transaction closed SM Hill and Hill Aerosystems were faced with a contractual obligation to Boeing and nonconforming parts. SM Hill and Hill Aerosystems made attempts to salvage the transaction. SM Hill and Hill Aerosystems invested approximately $350,000 to rework the parts so that they might be acceptable to Boeing – albeit with engineering exceptions.

3.46    As of the filing of this complaint, Boeing has not yet made a final determination regarding whether the parts will be acceptable, though Boeing has indicated that the order will likely be cancelled. Therefore, the amount of SM Hill's and Hill Aerosystems's loss related to the Boeing trunnion issue remains in flux.

3.47    Pursuant to the Stock Purchase Agreement, on or about July 22, 2015, SM Hill gave Unitech and the AGC Companies notice of a claim with respect to the losses and damages resulting from the Boeing trunnion transaction and issues (hereinafter, the "Boeing Trunnion Claim").

COMPLAINT FOR DAMAGES: 10

*18*

## IV.  FIRST CAUSE OF ACTION
*Confirmation of Award Pursuant to RCW Ch. 7.04A*

4.1     The Plaintiffs reassert and reallege each and every allegation and averment made above as though fully set forth herein.

4.2     The Stock Purchase Agreement contains a contractually agreed upon dispute resolution provision – namely, the "Claim Notices" provisions contained in Paragraph 8.4 of the Stock Purchase Agreement.

4.3     Those Claim Notices provisions are valid and binding dispute resolution provisions pursuant to RCW Ch. 7.04A.

4.4     Pursuant to those Claim Notice provisions, a claim is "deemed to have acknowledged" and the party to whom it is directed is deemed to have "agreed to pay" the claim if no response is made within 30 days of a notice's receipt.

4.5     Pursuant to RCW Ch. 7.04A, the outcome of a contractually agreed upon dispute resolution mechanism, like the Claim Notice provisions, cannot be challenged or overturned except under extraordinary circumstances that do not apply in this case.

4.6     Pursuant to RCW Ch. 7.04A, the Court's role is limited to confirming and enforcing the outcome of contractually agreed upon dispute resolution mechanisms.

4.7     SM Hill and Hill Aerosystems sent timely Claim Notices, in accord with Paragraph 8.4 of the Stock Purchase Agreement, with respect to:

4.7.1     The Hurricane Claim;

4.7.2     The Employee Termination Costs; and

4.7.3     The Boeing Setoff Claim.

4.8     Unitech did not respond to those Claim Notices within the requisite 30-day period.

COMPLAINT FOR DAMAGES: 11

*19*

1    4.9     Pursuant to the Stock Purchase Agreement, those Claim Notices are deemed to

2  have been acknowledged and Unitech has agreed to pay those Claim Notices.

3    4.10    The Court, should, therefore confirm those Claim Notices and enter judgment

4  against Unitech with respect to those Claim Notices.

## V.  SECOND CAUSE OF ACTION
*Breach of Contract: The Letter Agreement*

5.1     The Plaintiffs reassert and reallege each and every allegation and averment made

above as though fully set forth herein.

5.2     The Letter Agreement is a valid and legally binding contract.

5.3     The Letter Agreement obliged Unitech to indemnify SM Hill and Hill

Aerosystems against the Hurricane Claim, in any amount up to $40,000.

5.4     SM Hill and Hill Aerosystems performed all obligations under the Letter

Agreement.

5.5     By refusing its consent to settle the Hurricane claim and by refusing to

indemnify the Plaintiffs with respect to the Hurricane Claim, Unitech has breached its

obligations under the Letter Agreement.

5.6     Unitech's breach of the Letter Agreement caused monetary damages to the

Plaintiffs in an amount to be proven at trial.

## VI.  THIRD CAUSE OF ACTION
*Breach of Contract: The Stock Purchase Agreement*

6.1     The Plaintiffs reassert and reallege each and every allegation and averment made

above as though fully set forth herein.

6.2     The Stock Purchase Agreement is a valid and legally binding contract.

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

1    6.3    The Stock Purchase Agreement obliged Unitech to indemnify SM Hill and Hill

2  Aerosystems against the Hurricane Claim, Undisclosed Accounts Payable, the Boeing Rework,

3  the Employee Termination Costs, and the Boeing Setoff Claim.

4    6.4    SM Hill and Hill Aerosystems performed all their obligations under the Stock

5
6  Purchase Agreement.

7    6.5    By refusing to indemnify the Plaintiffs with respect to the Hurricane Claim,

8  Undisclosed Accounts Payable, the Boeing Rework, the Employee Termination Costs, and the

9  Boeing Setoff Claim, Unitech has breached its obligations under the Stock Purchase Agreement.

10    6.6    Unitech's breach of the Stock Purchase Agreement caused monetary damages to

11
12  the Plaintiffs in an amount to be proven at trial.

13                    **VII.  FOURTH CAUSE OF ACTION**
                        *Breach of Contract: The Boeing Trunnion Claim*
14

15    7.1    The Plaintiffs reassert and reallege each and every allegation and averment made

16  above as though fully set forth herein.

17    7.2    The Stock Purchase Agreement is a valid and legally binding contract.

18    7.3    The Stock Purchase Agreement obliged Unitech to indemnify SM Hill and Hill

19
20  Aerosystems against the Boeing Trunnion Claim.

21    7.4    SM Hill and Hill Aerosystems performed all their obligations under the Stock

22  Purchase Agreement.

23    7.5    By refusing to indemnify the Plaintiffs with respect to the Boeing Trunnion

24  Claim, Unitech has breached its obligations under the Stock Purchase Agreement.

25    7.6    Unitech's breach of the Stock Purchase Agreement caused monetary damages to

26
27  the Plaintiffs in an amount to be proven at trial.

28

COMPLAINT FOR DAMAGES: 13                    *21*

## VIII.  FIFTH CAUSE OF ACTION
*Fraud & Misrepresentation*

8.1     The Plaintiffs reassert and reallege each and every allegation and averment made above as though fully set forth herein.

8.2     Unitech and the AGC Companies, by and through Hill Aerosystems' financial records, represented that Boeing's trunnion order was a valuable corporate asset.

8.3     By failing to include any notation regarding the trunnions' nonconformity to the Boeing contract specifications, Unitech and the AGC Companies represented that there were no known problems or issues with Boeing's trunnion order.

8.4     Boeing's trunnion order was a significant order for Hill Aerosystems, and the financial representations regarding that transaction were material to SM Hill's purchase of Hill Aerosystems.

8.5     The financial statements provided by Unitech and the AGC Companies were false and inaccurate in not including any notation regarding the known manufacturing nonconformity with respect to Boeing's trunnion order.

8.6     Unitech and the AGC Companies knew or should have known that the disclosures made to SM Hill were materially false with respect to Boeing's trunnion order.

8.7     Unitech and the AGC Companies knew and intended SM Hill to rely and act upon the financial disclosures, including the disclosures with respect to Boeing's trunnion order, in deciding whether to purchase Hill Aerosystems.

8.8     SM Hill was unaware that the financial disclosures made by Unitech and the AGC Companies were inaccurate and untrue.

8.9     SM Hill relied upon the truth and accuracy of the financial disclosures made by Unitech and the AGC Companies.

COMPLAINT FOR DAMAGES: 14

22

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

8.10    SM Hill had a right to rely upon and did reasonably rely upon the truth and accuracy of the financial disclosures made by Unitech and the AGC Companies.

8.11    SM Hill suffered damages, in an amount to be proven at trial, by the false and untrue financial disclosures, made with respect to the Boeing trunnion order, by Unitech and the AGC Companies.

## IX.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

9.1    For money damages in an amount to be proven at trial;

9.2    For the Plaintiffs' costs and attorneys' fees, as permitted under Section 9.18 of the Stock Purchase Agreement and as permitted by statute, by rule, or otherwise; and

9.3    For such other relief as the Court deems just and equitable under the premises.


RESPECTFULLY SUBMITTED, this 1st day of September, 2015.


WITHERSPOON • KELLEY


DAVID M. KNUTSON, WSBA #24090
SHELLEY N. RIPLEY, WSBA #28901
MATTHEW W. DALEY, WSBA #36711
Counsel for the Plaintiffs

(Copy Receipt)          Clerk's Date Stamp



| SUPERIOR COURT OF WASHINGTON<br>COUNTY OF SPOKANE | JUDGE JAMES M. TRIPLET 99 |
|---|---|
| SM HILL FAMILY<br><br>**Plaintiff(s)/Petitioner(s),**<br>vs.<br>UNITECH HOLDINGS INC<br><br>**Defendant(s)/Respondent(s).** | CASE NO.   2015-02-03617-8<br><br>**CASE ASSIGNMENT<br>NOTICE AND ORDER (NTAS)**<br><br>**CASE STATUS CONFERENCE DATE:<br>DECEMBER 4, 2015 AT 8:30 AM** |

## ORDER

YOU ARE HEREBY NOTIFIED that this case is preassigned for all further proceedings to the judge noted above.    **You are required to attend a Case Status Conference before your assigned judge on the date also noted above.    The Joint Case Status Report must be completed and brought to the Status Conference. A Case Schedule Order, with the trial date, will be issued at the Status Conference.**

Under the individual calendar system, the court will operate on a four-day trial week.  Trials will commence on Monday, Tuesday, Wednesday or Thursday.  Motion Calendars are held on Friday.  All motions, other than ex parte motions, must be scheduled with the assigned judge.  Counsel must contact the assigned court to schedule motions and working copies of all motion pleadings must be provided to the assigned court at the time of filing with the Clerk of Court.  Pursuant to LCR 40 (b) (10), motions must be confirmed no later than 12:00 noon two days before the hearing by notifying the judicial assistant for the assigned judge.

Please contact the assigned court to schedule matters regarding this case.  You may contact the assigned court by phone, court department e-mail or through the Spokane County Superior Court web page at  **http://www.spokanecounty.org/superiorcourt**

**DATED:  09/02/2015**

SALVATORE F. COZZA
PRESIDING JUDGE

**NOTICE:  The plaintiff shall serve a copy of the Case Assignment Notice on the defendant(s).**

CASE ASSIGNMENT NOTICE        LAR 0.4.1(b)    (4/2001)    Rpt032                              Page 1 of 1



# GROUP EXHIBIT B

1

2

3

4

5

6

7

8

COPY
ORIGINAL FILED

SEP 03 2015

SPOKANE COUNTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE**

9   SM HILL FAMILY, LLC, a Washington limited
    liability company, and HILL AEROSYSTEMS,   No. **15203617-8**
10   INC., a Washington corporation,

11              Plaintiffs,   SUMMONS

12   vs.

13   UNITECH HOLDINGS, INC., an Oklahoma
14   corporation; ACORN GROWTH COMPANIES,
     LC, an Oklahoma corporation; EDGEWATER
15   SERVICES, LLC d/b/a THE EDGEWATER
     FUNDS, a Delaware limited liability; and JOHN
16   DOE COMPANIES 1-99, the corporate affiliates
17   of ACORN GROWTH COMPANIES, LC and
     EDGEWATER SERVICES, LLC d/b/a THE
18   EDGEWATER FUNDS,

19              Defendants.
20

21

22   **TO:    UNITECH HOLDINGS, INC., an Oklahoma corporation**

23        A lawsuit has been started against you in the above-entitled Court by SM Hill Family,

24   LLC, a Washington limited liability company and Hill Aerosystems, Inc., a Washington

25   corporation, Plaintiffs.  Plaintiffs' claims are stated in the written complaint, a copy of which is

26   served upon you with this summons.

27

28

SUMMONS: 1

*26*

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, or 60 days if you are served outside the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED, this 2nd day September, 2015.

WITHERSPOON • KELLEY

DAVID M. KNUTSON, WSBA #24099
SHELLEY N. RIPLEY, WSBA #28901
MATTHEW W. DALEY, WSBA #36711
Counsel for the Plaintiffs

SUMMONS: 2

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

COPY
ORIGINAL FILED

SEP 0 3 2015

SPOKANE COUNTY CLERK

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF SPOKANE**

| | |
|---|---|
| SM HILL FAMILY, LLC, a Washington limited liability company, and HILL AEROSYSTEMS, INC., a Washington corporation, | No. **15203617-8** |
| Plaintiffs, | **SUMMONS** |
| vs. | |
| UNITECH HOLDINGS, INC., an Oklahoma corporation; ACORN GROWTH COMPANIES, LC, an Oklahoma corporation; EDGEWATER SERVICES, LLC d/b/a THE EDGEWATER FUNDS, a Delaware limited liability; and JOHN DOE COMPANIES 1-99, the corporate affiliates of ACORN GROWTH COMPANIES, LC and EDGEWATER SERVICES, LLC d/b/a THE EDGEWATER FUNDS, | |
| Defendants. | |

**TO:    ACORN GROWTH COMPANIES, LC, an Oklahoma corporation**

A lawsuit has been started against you in the above-entitled Court by SM Hill Family, LLC, a Washington limited liability company and Hill Aerosystems, Inc., a Washington corporation, Plaintiffs. Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

SUMMONS: 1

*28*

**WITHERSPOON · KELLEY**
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, or 60 days if you are served outside the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED, this 2nd day September, 2015.


WITHERSPOON • KELLEY

DAVID M. KNUTSON, WSBA #24099
SHELLEY N. RIPLEY, WSBA #28901
MATTHEW W. DALEY, WSBA #36711
Counsel for the Plaintiffs

SUMMONS: 2

29

COPY
ORIGINAL FILED

SEP 08 2015

SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| SM HILL FAMILY, LLC, a Washington limited liability company, and HILL AEROSYSTEMS, INC., a Washington corporation, | No.  15203617-8 |
| Plaintiffs, | |
| vs. | SUMMONS |
| UNITECH HOLDINGS, INC., an Oklahoma corporation; ACORN GROWTH COMPANIES, LC, an Oklahoma corporation; EDGEWATER SERVICES, LLC d/b/a THE EDGEWATER FUNDS, a Delaware limited liability; and JOHN DOE COMPANIES 1-99, the corporate affiliates of ACORN GROWTH COMPANIES, LC and EDGEWATER SERVICES, LLC d/b/a THE EDGEWATER FUNDS, | |
| Defendants. | |

TO:    EDGEWATER SERVICES, LLC. d/b/a THE EDGEWATER FUNDS

A lawsuit has been started against you in the above-entitled Court by SM Hill Family, LLC, a Washington limited liability company and Hill Aerosystems, Inc., a Washington corporation, Plaintiffs. Plaintiffs' claims are stated in the written complaint, a copy of which is served upon you with this summons.

SUMMONS: 1

*30*

WITHERSPOON · KELLEY
422 WEST RIVERSIDE AVENUE, SUITE 1100
SPOKANE, WASHINGTON 99201-0302
(509) 624-5265

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, or 60 days if you are served outside the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED, this 2nd day September, 2015.


**WITHERSPOON • KELLEY**

DAVID M. KNUTSON, WSBA #24099
SHELLEY N. RIPLEY, WSBA #28901
MATTHEW W. DALEY, WSBA #36711
Counsel for the Plaintiffs


SUMMONS: 2

*31*